We're happy to hear your argument in our first case, number 17-4204. Ms. Allen? Good morning. May it please the Court? I'm Sonja Allen and I'm representing the appellant, Mr. James Henry Strong. In this case, the district court imposed a plainly unreasonable sentence by conditioning the price of a lesser sentence on the defendant's self-incrimination. This was procedurally unreasonable. We are prepared to argue under the standard of review of procedural unreasonableness as well as the plain error standard. We believe we prevail under both standards of review. Why do you think it's procedurally unreasonable as opposed to substantively? When a court does not follow the procedure of states and improper basis, in this case the court based the imposed sentence was based solely on a colloquy about nothing other than the defendant incriminating himself about pending charges in state court. Do we have any authorities that were binding on the district court at the time that would suggest to him that he was about to commit error? Yes, Your Honor. U.S. v. Mitchell. In the case of U.S. v. Mitchell, the defendant, Ms. Mitchell, was charged with a drug conspiracy. She pled guilty to that conspiracy, but there was a question in sentencing as to how much drug weight should be attributed to her. She did not take the stand to discuss it. She did not testify about her drug weight. The court in that case, when he imposed judgment, ruled that because you remained silent, I am holding that against you. And at that time, he ended up sentencing her to a mandatory minimum sentence, although the evidence did not even show that. He drew a negative inference from her remaining silent and not incriminating herself. The court in Mitchell established that a court, a district court, cannot condition a sentence upon someone's self-incrimination. Does it make a difference that we're talking about a revocation proceeding? It does not. There is a difference, but in this sense it is not different. A sentencing hearing from an original sentence, as well as a sentencing hearing for a revocation hearing, the defendant still does not have to incriminate himself. And the judge is not permitted to tie a conditional lesser sentence to the defendant incriminating himself. Is there a difference between not providing a reduction in a sentence and punishing somebody for not cooperating? The cases, at least the circuit cases, out-of-circuit cases, seem to make that distinction. Is there a difference in your mind? I do think there's a difference, but, Your Honor, I don't think that that is the issue before this court. This is not a situation where Mr. Strong had pled guilty to federal charges and stood before the judge and not further provide information about the offense that he had just pled guilty to and was going to be sentenced on. That would have been cooperation. If Mr. Strong had, the example would be, if Mr. Strong had robbed a bank, was charged with robbing the bank, pled guilty, and then at sentencing the judge wanted to know where's the money. There's no self-incrimination there. Everybody knows he's pled guilty. He's convicted of robbing this bank. In this case, a bank has been robbed. The defendant has been charged with bank robbery, not in federal court, but in state court, and those charges are pending and the judge knows it. But he's asked, where is the money? Do you think that all of the constitutional rights we accord a defendant in a guilty plea are available to him at a revocation hearing? Yes, Your Honor, I do believe that. And do you have a case that says that? There is no established case that says that he has lost his right to self-incrimination. One of the things that Mitchell does speak to is that even after a guilty plea at a Rule 11 hearing, the privilege of self-incrimination, of against self-incrimination, follows that defendant through the entire case. So are you saying that one right follows through, is available to him in each proceeding, or are you saying all constitutional rights that are available in a guilty plea are available to the defendant at a revocation hearing? I haven't contemplated all constitutional rights, but as it relates to the… I'm sorry, Your Honor, yes, that's correct. As it relates to the Fifth Amendment, the Supreme Court has spoken with that, and it does follow. I'm going to switch gears on you now. I want to go back to this procedural versus substantive question. And you believe that the error, alleged error in this case, is a procedurally unreasonable sentence. What is the best case you've got that this alleged error is a procedural error as opposed to a substantive error? U.S. v. Mitchell. U.S. v. what? U.S. v. Mitchell. And what year is that? 2010, I believe, Your Honor. Well, you cited Mitchell v. United States, the Supreme Court case. Is that what you're talking about? I'm sorry. Yes, Your Honor. Mitchell v. United States. And in that case, the court specifically drew a negative inference from the defendant's silence for not incriminating herself. That wasn't a question you were asked. I'm sorry. The question is going back to whether this is a procedural or a substantive error. And what's your best argument for saying it's a procedural error? We know that with the Mitchell involved, but I don't think it addresses that precise question, does it? Is there a difference between a substantive and a procedural error in sentencing? Yes. Yes. The court did not consider the arguments that were made by defense counsel. The court did not explain his chosen sentence. The court did not, and the court attempted to compel the defendant to incriminate himself. That is procedurally unreasonable. With regard to . . . Right, and we're asking you for the case that says something like that is a substantive error, or if there's cases that say it's a substantive error, why they're distinguishable. There's a Fourth Circuit case, U.S. v. Crudup, which sets out the standard for procedural unreasonableness, as well as U.S. v. Carter, another Fourth Circuit case. There is also the case of . . . I think we actually know the standard. What we're trying to do is to get a factual situation like this fit into the standard of substantive reasonableness or procedural reasonableness. And maybe you just don't have a case. That's fair enough. Well, I believe that in regard to substantive unreasonableness, the court in his colloquy with the defendant suggested and actually said, you would rather go to jail than be a snitch. You don't want to get time served. That conditioned the defendant's sentence on his self-incrimination. So had the defendant been willing to capitulate and give the information the court asked, he would have gotten a lesser sentence. That is illustrative of how unreasonable the sentence is. But it doesn't illustrate to us whether it is a procedural error or a substantive error, because in both you would get the person that's challenging you would be claiming that they'd get a lesser sentence. Don't you understand that? Yes. So the court saying you will get a lesser sentence if you give me this information, that demonstrates that he would have gotten a . . . it's unreasonable for him to now get the statutory maximum. So is it substantively unreasonable or procedurally unreasonable? It is both. It is both procedurally unreasonable because the court did not state a proper basis for its conclusion where it imposed the sentence. Or relied on an improper factor. And it also relied on an impermissible improper factor by relying on the defendant's silence. So you cited Mitchell, but as I recall now, as opposed to issue as to sentencing. And the court was careful in Mitchell not to express any opinion about this circumstance where you're dealing not with an inference of guilt, but whether or not the defendant's silence should be held adversely to him with respect to a sentence. So do you have a circuit court opinion, our circuit, that holds to that? Because what we're talking about here is whether or not the judge acted plainly unreasonably. And how can it be plainly unreasonable for him to suggest that as a result if he has no binding precedent that locks him in one way or the other? It's plainly unreasonable if it runs afoul of well-settled law. It is well-settled law that the defendant does not have to . . . the Fifth Amendment says that no person shall have to be a witness against himself in a criminal case. When Judge Boyle continued to ask details about a criminal charge that the defendant was facing, even though it wasn't in front of Judge Boyle . . . Okay, so you're conceding that but for the fact that the charges were pending, it would not be improper for a judge to use silence against a defendant? Well, part of the problem is the question of silence as briefed by the government was about silence as regards to cooperation. This case is not about cooperation. The case is about incrimination. Cooperation is when a defendant is already accepting responsibility, has pled guilty. In this case, the court . . . there was information before the court. There was testimony before the court that there were pending charges, that the lab results had not even been received from the state lab yet. The defendant had not pled guilty yet. He could not, in fact, cooperate. Someone doesn't cooperate when they have not even pled guilty. They're presumed to be innocent. But as I understood Judge Diaz's question, he's asking if that problem did not exist, there are no pending charges, or he's already pled guilty to them, then do you have the same argument? No, you don't. You don't. Because if he . . . the argument is made because he faces self-incrimination. If there's nothing pending and he doesn't face self-incrimination, it's not the same argument. And is it a losing argument then? In other words, did you have no argument then? We believe it's procedurally unreasonable. Well, see, but what it mutts up against is that a district court can, of course, take the defendant's cooperation into effect in sentencing, right? Yes, but this is not really cooperation. I understand, but we were positing the other situation. Okay. Right, and that's why we were asking you, would there still be error in what happened here? The judge can certainly consider a lack of cooperation on the part of the defendant in sentencing. But he has to do it silently. The court may be heard on it. That was not the situation in this case. The judge was not asking the defendant to just add details to something that he had already pled guilty to and was about to be sentenced on. He was not being sentenced for drug offenses in state court. The purpose of the revocation hearing is to punish the defendant for the breach of trust for not complying with the court orders. So it's very different for him to be punished beyond not coming forward with more details to incriminate himself on charges that were not before the district court. Let me ask you this. So one of the things I guess we need to consider is whether or not the mistake or error, whatever you want to call it, made a difference. And in this case, as I understand it, the guideline range was significantly above the maximum sentence that the judge could impose. I think it was 30 to 37-month guideline, capped at 24 months. So why can't we be confident that in this case this error, if it was error, really didn't make a difference? Because there really wasn't much else that the defendant presented with that suggests that the result would be any different if we sent it back. The court makes it clear that it would have been different because the judge said so. The judge said, so what are you going to do, just take the time? Smart guys like you do time served. You want to go to jail rather than be a snitch? It's very clear that had this defendant incriminated himself, he would have gotten a lesser sentence. So the error was certainly not harmless. Was there ever any objection made to the line of questioning by the judge? No, there was not. So if we apply a plain error standard to review this, what do you rely on to show the error was plain? The error was plain. Besides Mitchell. The error was plain because the Fifth Amendment does not require a person to testify before the judge should the judge or would you have us look at to determine this error was plain? Your Honor, I believe that U.S.V. Mitchell is the case that works for that. All right. How would you distinguish CRUDUP, which is C-R-U-D-U-P, a case that we handed down in 2006 where we said that we looked at whether or not there was a proper basis for the maximum sentence. In other words, we looked at the basis for the sentence. Right. And we said that's a substantive problem, a substantive issue. Right. So why would that not establish for this court, for the district judge, what the proper standard is to evaluate it? Your Honor, I believe in CRUDUP the judge, in fact, did explain the sentence that he chose. In this particular case, the district court was silent about the chosen sentence. I thought you said he told you why. He said why. It's certainly clear why in his colloquy with the defendant, but he did not explain why he rejected the other arguments that were made by defense counsel, and he attached it solely to an impermissible reason. I thought your problem was not what he didn't say, it's what he did say. It certainly is, and that is the focus of our argument. But I believe that what he did say also underscores the fact that he did not follow proper procedure by considering the other arguments made. If you're right, does it mean then that a sentencing judge gets into trouble for reducing a sentence for cooperating? Absolutely not. How do we make a distinction? The distinction is that this was not the – this is like apples and oranges. Apples would be this is a sentencing where the defendant has already pled guilty. This man was presumed in the cloak of innocence as it related to those charges, and for him to answer any questions would have only possibly incriminated him in the pending charges and maybe even led to even more serious conspiracy charges down the road. Well, but if the judge then says, I understand your predicament, but given the lack of cooperation, I think this is the appropriate sentence, what's wrong with that? That would have been fine, but that's not what happened. The judge asked a lot more than that. Where are you getting the drugs from? But he never answered. Who are you protecting? He never answered. Which was a good thing for the defendant, but the court should not be permitted to press someone. I guess the problem is where do you draw the line here? It's about fairness. It's about fairness and the fact that this is the reputation and integrity of the court. And for the court to punish someone for not incriminating themselves is inappropriate. And this court has the discretion to reverse that and correct that error and to make sure it doesn't happen to future defendants. Thank you very much. You have a little time left for rebuttal. Thank you. Good morning. May it please the court. Christine Fritz on behalf of the United States. This is a case where the Fifth Amendment has been asserted on appeal as an afterthought. That's why it's subject to the more rigorous plenary standard of review and meant that the defendant can't maintain his burden on any of the prongs. I'd like to turn briefly first to the proper standard of review.  the defendant suggests that a no contest plea somehow amounts to a blanket assertion of Fifth Amendment rights for the rest of the hearing. That's simply not the case. The information before the court here was in the revocation motion. It stated that the defendant had been charged with crimes in state court. The defendant chose to plead no contest, which is essentially a decision to put the government to its burden of proof to require the government to prove its case, which we did. And at that point, the court had found by a preponderance of the evidence that the violation number two had been committed because we did not proceed on violation number one. And at that point, I suggest that any presumption of innocence, at least with respect to this hearing, is no longer. The violation had been found. The range for the sentencing was based on the defendant's criminal history and on the class of the grade of the violation. And at that point in time, all that was left was the sentencing considerations. At no point was there any suggestion by the defendant that he was concerned about saying something that incriminated him. And in fact, if you look at the colloquy between the defendant and the court, what the defendant was concerned about was not self-incrimination at all. He said, I don't want to be a snitch. And that is his prerogative. He can choose not to give information, but by the same vein, the court is not required to reward that. And I think that in the kind of. I don't think there was anything improper. I didn't say constitutes reversible error, but anything improper in the whole conduct of the district judge in this hearing. I don't believe that there was error. I don't believe that there. Remember my question? Yes. Leaving aside error. Is it the government's position that this is the proper way to conduct a hearing? I think that what the court did here is give the defendant an opportunity to earn leniency. And I don't think that's improper. I think that the defendant had, defense counsel had put forth some arguments. So if we would affirm here, we would say, you know, district judges around the fourth circuit, we perceive this in this manner because this is appropriate. I. What you're suggesting? I really don't think. Has that been a discussion with the United States attorney? No, that has not been a discussion with the United States attorney, but I suppose I view the colloquy differently because my understanding of the court's colloquy is that he wanted the defendant to do the right thing. He's appealing to the defendant that this is the opioid epidemic is a serious problem. Were you there? No, I was not. And neither were we. But we all have the record. Correct. And it does not look to me in the record as if this was just a friendly chat about you can do yourself some good here. Now, does it read that way to you? I think that it's hard to read tone. I imagine that this was probably an uncomfortable colloquy. You know, the district judge. Yes. But at the same time, I think that the district judge is keying in on things that are relevant to revocation sentencing. Let me ask you this question. When the government was proving the violation in that hearing, was it, were there been anything improper with the government asking the witness, the law enforcement officer, if the defendant had told him where the drugs came from? No. So that information could have been obtained without any allegation of impropriety. Yes. During the hearing itself. Absolutely. To the extent, if there had been a statement made, that information could have been elicited. And, and, and, and that's completely appropriate. I think that what the court was looking for here, and of course your honors may disagree, but was looking for some indication that the defendant was divorcing himself from this criminal activity. And if you look at some of the things the court says, I mean, he says, I mean, how can you expect to get straight if you're still part of it now, who could possibly be protecting that's anything of value. And he talks about the opioid epidemic, that people are dying and points out that the, that this was a seasoned judge. He was intelligent based on the facts presented to him. He had reached the conclusion by a preponderance of the evidence that this And the facts certainly support that. And honestly, at that point in time, I don't think that the judge was necessarily interested in, in hearing the court. What if, what if rather than engaging in that colloquy with the defendant, the judge during his sentencing explanation said, well, I haven't heard anything about you cooperating with anyone. And I'm taking that into account. Is that wrong? No, I don't believe that that is wrong. And in fact, I would suggest that Roberts, I think that Robert says that you can consider cooperation to the extent that it is relevant to sentencing factors, such as remorse, contrition, removing oneself from criminal conduct, divorcing yourself from your connections to the criminal underworld. When you are willing to share information on potential co-conspirators, it is an indication to the court that you are breaking from that life, that you are recognizing your wrongdoing and you are trying to fix the problem that you had been a part of. So I don't think that for a court to reflect on that as a problem, a court may consistent with the fifth amendment, reward a defendant for, for engaging in pro societal behavior. Let me ask you related to judge Matz's question, although this isn't, I guess wasn't raised on appeal, but what struck me with respect to this hearing is that this lack of cooperation seemed to be the focus of the judge's concern. And then at the very end of the case, he provides virtually no explanation for the sentence. He just says 24 months court's adjourned. Isn't that a problem? No, I would suggest that it isn't a problem because, well, I mean, aren't you supposed to engage with the 3553 factors, the ones that are relevant with respect to replication? Admittedly, not all of them are, but he didn't say anything about any of them. I think that if you look at his statements throughout the colloquy, that there is sufficient information there to support the imposition of the policy statement range sentence. He found the violations he recognized during the hearing that, but for the statutory cap, he would have been facing 30 to 37 months. He recognized that the defendant was on supervised release. He had 37 bundles of heroin, two extra grams of heroin money in his pocket, no legitimate job. He, he had no explanation for that. And, and that's an egregious breach of trust. This, a one-time drug dealer isn't necessarily going to have that much on him at that time. That's an egregious breach of trust in the court. Ever say that this was an egregious breach of trust. The court did not use those words, but the court, the explanation you just gave was, I think far more fulsome than what the district court judge did in this case. I think that I'm collecting statements throughout the sentencing hearing or throughout the revocation hearing, because the court did recognize these different things. All right. Well, let me ask back to judge Matz's question. How would you have us write this opinion? Are you, I don't know that you gave an answer. Are you suggesting that we should tell district court judges that this is a okay. I would, I would anticipate that an opinion would be similar to what this court wrote in either Gonzalez or Yanis Hernandez, where the court recognized that there was no binding Supreme court precedent or fourth circuit precedent addressing whether, and to what extent a refusal to cooperate or accept responsibility, um, can be used in terms of, um, the characteristics of the defendant, his remorse, his contrition, his recognition of wrongdoing. And that in light of the absence of binding authority, that the error simply cannot be plain. And beyond that, the court could acknowledge that the defendant has not met his burden to demonstrate prejudice. The guideline range was 24 months. It would have been much higher had there not been the statutory cap. Although, and I would suggest that what the court did say, focusing on the facts of the offense, recognizing the policy statement range, and asking the defendant to, and highlighting how can the defendant get clear of this if he is not, um, recognizing that what he's been doing is wrong, that that is a sufficient basis. And that there's no reason to believe based on the arguments that were presented, the court would have done anything other than impose the policy statement range. Let me ask you a, kind of a different question, a hypothetical, not this case. So the answer to this question will be, will not be that is not this case. But a case where the district judge, um, says things that are, um, that we would all admit are violative of the Fifth Amendment. You know, you've got to tell, you've got to confess. This is, this is, you, you're not hurt. You're just hurting yourself if you don't, and you have to do it. But at the end, goes forth and goes through the, um, sentencing factors, and sentences the person. The correct sentencing factors, the statutory sentencing factors. Would there be any problem with that? In your hypothetical, had the defendant asserted his Fifth Amendment right? Uh-huh. He had asserted his Fifth Amendment right. I think that that is a question that existing precedent doesn't squarely answer. Um, and I think about what. We're not in the world of qualified immunity, right? So we're in the world of giving guidance and, and acting appropriately. Yes. And so, so I put it to you. You would, you know, you put yourself in the place of the, the question that Judge Diaz asked you is the question we have in every one of these cases is how does this opinion write? And you haven't given us too much help here. So what would you, how would you write that opinion? With those hypotheticals, which is not this case.  And I am mindful of what the Supreme Court had said in the McArthur case, when they were grappling with a difficult Fifth Amendment issue. And they go on and they say, but the federal constitution, which marks the limit of our authority in these cases, does not guarantee trial procedures that are the best of all worlds, or that accord with the most enlightened ideas of students of the infant science of criminology, or even those that measure up to the individual predilections of members of this court. I think that the Fifth Amendment is a very nuanced and complicated area. It's not always straightforward. And sometimes the result that one might want or be drawn to is not necessarily what the Fifth Amendment requires. And I, the McArthur case was, was a very interesting case and it dealt with the unitary guilt and penalty phase in the state of Ohio. And I think that most people would agree that that was not appropriate. So I think that this, if the court, in your hypothetical, if the court were to have pressed the defendant to make incriminating statements in violation of the Fifth Amendment, and nevertheless imposed a sentence that was well-reasoned and explained, and based on absolutely legitimate concerns, I don't know if there would be a Fifth Amendment violation. And I don't know if there would be compelled speech in your case. I guess in your hypothetical, is the defendant compelled to speak over his objection? Or are you suggesting that only by the force of sitting in front of a federal district judge, who's questioning you, like, are you compelled to speak now? Well, I'm, I'm here at the invitation of the court and I'm glad to be here. But I think that, again, the Fifth Amendment is not self-executing. You need to assert it. And to the extent that the court requires you over that legitimate assertion of a Fifth Amendment right to speak, then yes, you might have a, you could potentially have a problem there. Let me ask you a question. How did the judge know the defendant had not cooperated and disclosed the source of the drugs? Is that in the record? No. I think that the judge was legitimately concerned about the opioid epidemic. The way I read the record, he knew from the get-go. He didn't have to ask the question, had he cooperated? He knew from the very beginning, this defendant had not disclosed his source. And I want to, my question is, how did he know that? Is there anything in the, in the presumptuous report or anything in any hearing that he would have learned that from? How did he know that? I'm not aware of how he knew that. I think that the judge was curious. But there's nothing that I'm aware of that was provided to the court, other than the revocation motion, that would have shed any light on statements the defendant did or did not make or any cooperation. So again, and I think that one case that is, that I would direct the court's attention to in the acceptance of responsibility type context, is Frazier. And that is a published decision of this court where the court had, and I'll, and I'll quote this, that the court had no difficulty concluding that the choice presented to a defendant under 3E1.1, by conditioning the availability of the section's two-level reduction on the waiver of the Fifth Amendment right, is more analogous to and constitutionally indistinguishable from the choice confronting defendants in the plea bargaining cases. And it goes on, the court goes on to say that the choice which the appellant has faced is an incidental consequence of a legitimate government practice of encouraging, through leniency at sentencing, both cooperation with law enforcement authorities and contrition on the part of the defendant. So this was the authority, this was the published authority that was available to the court at that time. There was no published authority, and the defendant has pointed to no published authority, clearly stating that what, that, that considering failure to accept responsibility to fully confront your crime or to cooperate, there is no case law that they have pointed to that says a court may not consider that as it relates to contrition, remorse, or divorcing oneself from. Something different happened here. I was going back and, because I think that Judge Traxler's question is really a good one. We have the hearing, that's all we have. And the court starts out with, I mean, you need to do the right thing with this heroin. You need to. I mean, you can't give your mercy on anything like that. You're doing, you need to do the right thing. You need to step up. I mean, it's just kind of out of the blue. I think that the court is acutely aware of the problems that the opioid epidemic is confronting his community. And he wanted this individual to stop being part of the problem and start being part of the solution. And he was giving him an opportunity to do that. And to the extent that the defendant did not want to do that because of fear of self-incrimination. No, he doesn't know anything about that. One way or the other. He knows who his supplier is. But he doesn't know anything about cooperating, not cooperating. At least, I can't find it. You haven't pointed out to it earlier in this. Oh, I'm sorry. You mean he, the court? Yeah, the court. I'm sorry. I thought you meant he, the defendant. The court doesn't know anything about whether he's cooperating or not cooperating or, you know, whether he's the Lone Ranger. He's so incredibly smart at all this that he makes the drugs himself and then sells them. Right? He doesn't know any of that. To the extent that he doesn't know anything about that, I don't think that there's a problem with the court soliciting more information. And, it doesn't, it sounds like a threat. It doesn't sound like a request. Can I ask, I'm sorry. Sorry, go ahead. Can you tell me what happened in state court eventually with regard to the charges that were pending? I, when I had last looked, that the original charges from violation one, what had been pending, the charges related to violation two had not been served. I have not looked recently. I can tell the court that it is very common, the case that once a defendant receives a federal sentence, and that sentence remains in place, that those charges are dismissed. One of the things that concerns me about this is, if I'm defense counsel, and I know my client's going to plead guilty in state court, and the judge starts asking me these questions, I might not object because I know it's not going to cause any harm eventually, because my client's going to plead guilty to the state court charges when they come up. So you sit there, you don't say anything, then later on you're able to take advantage of the issue that's here in this case now, and presently before us when, for all we know, there was no harm at all in asking these questions. And I would agree, and I would note that the defendant was represented by a veteran counsel who, to the extent that she was concerned about the Fifth Amendment privilege, she could have invoked it on his behalf. She could have directed him not to answer. And I see that my time is up, but I would simply ask that this court affirm the judgment of the district court under a plainer standard of review. Thank you. Thank you. Ms. Allen, you have a little bit of time for rebuttal. You might try to address Judge Traxler's question, his last question. Do you remember it? I'm sorry, would you repeat it? I'll rephrase it for you. Thank you. This is a pretty, the argument you're making is one that if there is indeed a Fifth Amendment privilege at this stage of the proceedings, the judge is asking him to disclose information that could be used against him in state court. Now, any veteran defense attorney is going to know, you know, that you're starting to tread very closely to a Fifth Amendment privilege, and yet no objections made whatsoever. So why could we not assume, based on the fact that experienced defense counsel is representing the client, that there is no Fifth Amendment problem, certainly no prejudice in the judge inquiring into these issues, because it's never going to come up in state court. Your Honor, I happen to know that the counsel in this case was a federal public defender, not the defender that would have been representing him, defense counsel, in state court. That means we have a very experienced defense counsel. Yes, it does. Right. However, for the defendant, in this particular case, if I could step back and just pick up my transcript, I wanted to show you. Sure. Defense counsel, I'm sure, had to make a quick call. It's very hard sometimes to figure out whether you should interrupt the judge or let the judge continue to talk to your client. One of the things that happened in this case was, as the judge continued to press, the client did not give incriminating statements. Therefore, an objection was not really needed at that point. And I do think that the defendant attempted to... No, no, I'm not saying that. I'm saying the court should not have sentenced the client based on his silence, and he got a much harsher sentence because he refused to give the court the information he wanted, which was self-incriminating. I do think that the defendant was not the most articulate, and he did make a statement. And in that statement, when the court was saying, are you smart? Yes, sir. Why didn't you cooperate? He says, well, at this point in time, I feel like me not, you know, like my lawyer just explained to me, cooperating with law enforcement was because of the simple fact, you know, I really didn't. It goes on. I really didn't condone it. The judge is like, you didn't what? And then he says, well, I really didn't, you know, I didn't want to be labeled. And then the judge fills in the words snitch. This person is not someone who knows how to clearly articulate when to, when and how to clearly articulate the fifth. But he certainly says, my lawyer just explained it to me. I don't think his lawyer was explaining to him. You don't want to be a snitch. Now he followed the path that the judge gave him when the judge said you didn't want to do what a snitch. And then they went that way. But nonetheless, this defendant was not able to articulate it, but he knew that he was going to incriminate himself. If he answered any questions, that's why he had a no contest plea. It was not a denial. That was as close as he could get to accepting responsibility without incriminating. If judge Boyle had, had told the defendant in this case, I've considered all the evidence and your statement. Well, I guess he hadn't made a statement yet, or maybe he did, but here's where I'm at. I'm at a sentence of X, whatever X is. And I think that's an appropriate sentence under the relevant factors. But if you tell me something, tell the government something with respect to cooperation, I might reconsider that sentence. Is there anything wrong with that? Well, I don't have time, Your Honor, but if you'd like, I'll answer that. I would say there is not a problem with that because that is the judge asking a question. That is not the judge continually to hammer the defendant over and over. So is it just the haranguing that is a problem? No, it's not the haranguing. At that point, the judge has given a considered explanation for where he is. He's considered the facts in the case. He's considered what the non-frivolous arguments are, all of that. And he can make the suggestion, but that is not the same thing as what happened here. I want to ask one other question. Let's suppose this looks as if you're coming up with a different one. The prosecutor, the defendant's been sentenced, I mean not sentenced, he's been found guilty of the violation. The prosecutor says, Judge, we're investigating this drug ring. We've talked to this defendant and tried to get him to tell us who his source was so we can go further up the chain. And he won't do it. He refuses to give us any information about his drug dealings. So we therefore ask you to increase his sentence because of his lack of cooperation and give a sentence at the high end. Can the prosecutor do that? That would be an abuse of power. And the judge does it. And the judge says, okay, I agree with you. Because he's not cooperated, I'm going to send him to a greater sentence than normal. Is there anything wrong with that? Yes. What? The government is looking to, the government has to prove their case without the help of the defendant. The defendant can't, is not, should not suffer. We're not talking about proving their case. We're talking about the sentence. What's the appropriate sentence? The appropriate sentence is not based on the government trying to get information from the defendant about other, other people that they're prosecuting. That was the premise of your question. Well, look at those sentencing factors. Cooperation is one of them. It is one of them, but it cannot be the sole reason. The court is supposed to consider all of the 3553A factors that are applicable in a revocation hearing. And he did not do that. Thank you. Thank you very much. Thank you. We will come down and meet the lawyers and then go to our next case. I have to tell you, I thought both lawyers did really an excellent job.
judges: Diana Gribbon Motz, William B. Traxler, Jr., Albert Diaz